(October 30, 1989)

■ In the Matter of JOHN M. CASSEL, an Attorney, Respondent. COMMITTEE ON PROFESSIONAL STANDARDS, THIRD JUDICIAL DEPARTMENT, Petitioner.—Per Curiam. Respondent is an attorney admitted to practice by this court in 1976. In 1980, after serving as Assistant County Attorney for Dutchess County, he established a solo law practice in Highland, Ulster County. Respondent, age 57, states that he retired from the practice of law in December 1988 and has not practiced since.

The instant proceeding to discipline respondent involves five charges of professional misconduct. Four of these charges concern respondent's representation of two elderly female clients, Winifred Shay and Eliane Veve, and his subsequent handling of their respective estates. A fifth charge involves respondent's handling of the estate of John Marck. Following a hearing, the Referee issued a report sustaining in full two of the five charges of misconduct and partially sustaining a third charge. Petitioner and respondent have each moved for an order confirming in part and disaffirming in part the Referee's report.

Charge I alleges that respondent violated Code of Professional Responsibility DR 5-101 (A), DR 5-104 (A) and DR 5-105 (A) in that he involved himself in a conflict of interest by accepting employment in which the exercise of his professional judgment on behalf of his client was likely to be impaired. More particularly, specification 1 alleges that re-

spondent was the named residuary beneficiary pursuant to the terms of the will of his client, Winifred Shay, an 86-year-old widow. In her will, dated July 2, 1986, Mrs. Shay devised her house to her brother-in-law, Thomas Shay, and his wife. In June and July of 1987, when aware of the contents of Mrs. Shay's will (although he did not himself draft it), respondent represented Winifred Shay in the sale of her house to respondent's secretary and her fiancé. In so doing, respondent negotiated a release from Thomas Shay and his wife, who had originally given Winifred Shay and her husband the land upon which the house was built in exchange for the right of first refusal should the property ever go on the market. When Winifred Shay died in August 1987, her residuary estate, as the result of the sale of her residence to respondent's secretary and her fiancé, was increased by approximately $110,000, which respondent then inherited. The Referee did not sustain this specification.

Specification 2 asserts that respondent had represented one Eliane Veve since 1978 in matters including the settlement of her husband's estate and the bringing of an action for his wrongful death. In May 1983, when Veve was 84 and about two weeks before her death, respondent prepared a deed which Veve signed transferring title to her residence to respondent and his wife. By the terms of the deed, Veve retained a life estate in the residence. No consideration was given for this transfer, it is alleged, and Veve was not represented by independent counsel. In July 1983, respondent sold the property for $65,000. The Referee sustained this specification.

Specification 3 states that the value respondent placed on Veve's property at the time it was transferred to him and his wife in May 1983 was $40,000 (the amount in which respondent contends Veve was indebted to his wife for having run errands for Veve over a period of several years). Respondent was allegedly aware at this time that Veve's property had been appraised in August 1978 at $43,800. The Referee sustained this specification.

Charge II alleges violation of DR 1-102 (A) (5) and DR 9-102, i.e., that respondent engaged in conduct prejudicial to the administration of justice and failed to preserve the identity of funds of a client by his failure to deposit estate funds into an estate account and by his paying portions thereof to himself. Specification 1 thereof charges that on July 7, 1987, respondent received approximately $30,000 in cash from the sale of Winifred Shay's residence, which he deposited in his attor-

ney's escrow account. Mrs. Shay died on August 20, 1987 and, pursuant to the terms of her will, respondent was named executor and residuary beneficiary of her estate. Respondent never transferred the $30,000 from his escrow account to an estate account. Specification 2 states that prior to the issuance of letters testamentary to respondent in November 1987, he issued checks from his escrow account to himself, as residuary beneficiary, totaling $12,139. At the time of these payments, specific bequests had not been paid. The Referee sustained charge II, but only to the extent that respondent's conduct was found to be violative of DR 1-102 (A) (5).

Charge III also alleges violation of DR 1-102 (A) (5), i.e., that respondent engaged in conduct prejudicial to the administration of justice by taking legal fees and an executor's commission without court approval. Specification 1 thereof states that as executor of the estate of John Marck, respondent paid himself $8,992.44 for legal services and an executor's commission without obtaining court approval. The Referee did not sustain this specification.

Charge IV alleges that respondent violated DR 1-102 (A) (4), (5), i.e., that he engaged in conduct involving dishonesty, fraud, deceit and misrepresentation and engaged in conduct prejudicial to the administration of justice by attempting to deceive petitioner concerning his representation of the estate of Eliane Veve. Specification 1 states that at a preliminary hearing before petitioner in July 1988, respondent testified under oath that, as attorney for the estate of Veve, he sold her automobile to one Shawn Murphy. He thereafter supplied petitioner with an affidavit confirming his statement at the hearing that the sale took place in July 1983. Since the relevant records supplied by the Department of Motor Vehicles disclose that the sale did not take place until January 1985, and that the car was registered in respondent's name for 18 months prior to that date, the statements by respondent and the affidavit attesting that the sale took place in July 1983 are alleged to have been untrue. The Referee sustained this specification.

Charge V alleges violation of DR 9-102 (B) (2), (4), i.e., that respondent failed to identify his client's property and to put it in a safe place and that he failed to promptly deliver a client's property to him. Specification 1 charges that respondent, as the executor of the estate of Veve, transferred title to the above-mentioned automobile to himself and kept it until January 1985. The Referee did not sustain this specification.

We conclude that the record supports the findings of the

Referee in sustaining charge I (specifications 2 and 3), charge II and charge IV. As to the Veve matter (charge I, specifications 2 and 3; charge IV), evidence adduced before the Referee establishes that respondent clearly involved himself in a conflict of interest when he prepared the deed transferring title to the Veve home to himself and his wife while Veve was not represented by independent counsel. It is further evident either that Veve received no consideration for this transfer or that the transfer was to discharge an alleged debt to respondent's wife which was worth far less than the value of the house. Respondent and his wife testified that Mrs. Cassel had run errands for the elderly Veve and took her to doctor's appointments over a five-year period at an agreed-upon wage of $8 per hour. According to this testimony, since Mrs. Cassel's bill for these services ultimately totaled over $40,000, she and respondent took title to Veve's house in lieu of cash payment. As found by the Referee, such an arrangement, if in fact it existed, would be unconscionable given Veve's vulnerable condition and meager assets. The further allegation that respondent undervalued Veve's property by taking it to defray the alleged $40,000 debt is supported by the fact that two months after the transfer of the property to respondent and his wife, they were able to sell it, without making any improvements, for $65,000.

There is also sufficient support in the record for the Referee's sustaining charge IV, alleging that respondent attempted to deceive petitioner regarding the sale date of Veve's automobile. While respondent presented testimony before petitioner that the sale to Murphy took place shortly after Veve's death in 1983 and submitted an affidavit by Murphy attesting to this, records from the Department of Motor Vehicles show that respondent transferred the car to himself in 1983 and did not sell it to Murphy until January 1985.

As to the Shay matter, we find that the charge sustained by the Referee relating thereto (charge II) was also amply supported by the record. First, it is uncontested by respondent that he deposited the approximately $30,000 cash proceeds from the sale of Shay's house into his attorney's escrow account and that when Shay died six weeks later and respondent was named her executor and residuary beneficiary, he failed to transfer the funds into an estate account. Further, respondent wrote two checks totaling $12,139 to himself, as residuary beneficiary, before letters testamentary had been issued and before specific bequests under the will had been paid. While respondent argues that this conduct hurt no one,

we find that under the circumstances such behavior was improper and prejudicial to the administration of justice as concluded by the Referee.

We also concur with the Referee's determination that there was insufficient evidence to sustain charge I (specification 1), charge III and charge V. We note, with respect to charge I (specification 1), that it is apparent respondent had a financial and personal interest in the sale of Shay's home. The relevant disciplinary rule, however, permits a lawyer's participation in such a transaction with the consent of the client after full disclosure (DR 5-101 [A]). We agree with the Referee that petitioner's case for misconduct here is premised on circumstantial evidence which, although arguably consistent with an inference of guilt, is simply insufficient to sustain the requisite burden of proof.

The charges of misconduct sustained by the Referee and this court, especially those involving client Veve, are most serious. Respondent's conduct in effecting the transfer of this aged client's residence to himself and his wife, under circumstances such as are presented here, is unconscionable and warrants severe discipline *(see, Matter of Gallow,* 138 AD2d 803). Accordingly, the sanction of suspension for five years is hereby imposed.

Referee's report confirmed; respondent suspended from the practice of law for a period of five years and until further order of this court, the date of commencement to be fixed in the order to be entered hereon. Kane, J. P., Weiss, Yesawich, Jr., Levine and Harvey, JJ., concur.